[No. 11387.    Department One.    February 14, 1914.]

## PLAZA FARMERS' UNION WAREHOUSE AND ELEVATOR COMPANY, *Appellant*, v. W. M. RYAN *et al.*, *Respondents*.[1]

BILLS AND NOTES—ORDERS—ACCEPTANCE—WHAT CONSTITUTES.    It is not an acceptance of an order, within the negotiable instruments act, to return the same with the statement that the amount due is same as the order, but that the drawee did not know if the drawer's hands had been paid and will have to wait until thirty days are up; Rem. & Bal. Code, §§ 3522, 3531, defining an acceptance as the signification of the drawee's assent to the order, which must not express a promise to perform other than by payment in money, and providing that a qualified acceptance is one that makes payment dependent upon a condition therein stated, or which agrees to pay only part of the amount.

Appeal from a judgment of the superior court for Spokane county, Webster, J., entered January 4, 1913, in favor of an intervener, on overruling a demurrer to the complaint in intervention, in an action on contract.    Reversed.

*Parks & Day*, for appellant.

*Berkey & Cowan*, for respondent State Bank of Spangle.

ELLIS, J.—The plaintiff brought an action against the defendant Ryan to recover the purchase price of goods sold and delivered.    The defendant, failing to appear, suffered judgment by default.    The plaintiff sued out a writ of garnishment, making one Binge garnishee defendant.    The garnishee defendant answered, admitting that he was indebted to the defendant Ryan at the time of the service of the writ in the sum of $749.92, but alleging that the State Bank of Spangle claimed the money; that he was in doubt as to who was entitled to it, and therefore deposited the money in court and asked that the claimants litigate their rights as to its ownership.    The State Bank of Spangle filed a complaint in intervention, alleging that, on or about the 26th day of Sep-

[1]Reported in 138 Pac. 651.

tember, 1912, the defendant Ryan executed and delivered to
the intervener a written order addressed to the garnishee de-
fendant Binge, directing him to pay to the intervener or its
order the sum of $749.92, and that thereafter, upon the same
day, the intervener presented the order to the garnishee de-
fendant, who, on the 27th day of September, prior to the
service of the writ of garnishment, accepted the order in
writing.  The order and the alleged acceptance were attached
to the complaint in intervention as exhibits, and read as fol-
lows:

W. F. Binge,                         Spangle, Wn. Sept. 26, 1912.
    Plaza, Wn.
Dear Sir:
  Pay to the order of State Bank of Spangle, seven hundred forty
nine & 92-100 Bal. threshing acct.               Wm. Ryan.
Dear Sir:
  I return the Ryan order.  Bal. of his acct. is same as order
but I do not know if the hands have been paid and will have to wait
till 30 days are up.               Yours Truly,  Wm. Binge.

The plaintiff demurred to the complaint in intervention on
the ground that it did not state a cause of action.  The de-
murrer was overruled, the plaintiff refused to plead further,
judgment was entered in favor of the intervener and the
plaintiff appealed.

The sole question presented for our consideration is as to
the legal effect of the alleged acceptance.  The order did not
operate as an assignment, but constituted an inland bill of
exchange not binding upon the garnishee defendant until and
unless he accepted it in writing.  Negotiable instruments act,
§§ 126, 127; Laws of 1899, p. 362; Rem. & Bal. Code,
§§ 3516, 3517 (P. C. 357 §§ 251, 253).  *Frederick & Nelson
v. Spokane Grain Co.*, 47 Wash. 85, 91 Pac. 570; *Wadhams
v. Portland, Vancouver & Yakima R. Co.*, 37 Wash. 86, 79
Pac. 597.  The decisions cited by appellant in this connec-
tion, *Bellingham Bay Boom Co. v. Brisbois*, 14 Wash. 173,
44 Pac. 153, 46 Pac. 238, and *Ford v. Aetna Life Ins. Co.*,
70 Wash. 29, 126 Pac. 69, are not controlling.  The first

mentioned decision antedated the negotiable instruments act, and the second did not involve negotiable paper. The purpose of the negotiable instruments act was to make certain and uniform the rules governing negotiable paper, displacing the Law Merchant, which, through hard cases and an accumulation of conflicting decisions, had become uncertain and variant. *Washington Finance Corporation v. Glass*, 74 Wash. 653, 134 Pac. 480. The concrete question, therefore, is, Did the writing last above quoted constitute an acceptance under the negotiable instruments act? That act, § 132; Rem. & Bal. Code, § 3522 (P. C. 357 § 263), defines an acceptance as follows:

"The acceptance of a bill is the signification by the drawee of his assent to the order of the drawer. The acceptance must be in writing and signed by the drawee. It must not express that the drawee will perform his promise by any other means than the payment of money."

Section 139 of the act; Rem. & Bal. Code, § 3529 (P. C. 357 § 277), provides that an acceptance may be either general or qualified, and § 141 of the act; Rem. & Bal. Code, § 3531 (P. C. 357 § 281) defines a qualified acceptance, so far as here material, as follows:

"An acceptance is qualified, which is—(1) Conditional, that is to say, which makes payment by the acceptor dependent on the fulfillment of a condition therein stated; (2) Partial, that is to say, an acceptance to pay part only of the amount for which the bill is drawn."

The section first quoted makes it plain that to make an acceptance there must be a signification of the "assent" of the drawee to the "order" of the drawer. Clearly, his mere admission of the correctness of the amount of the bill is not enough. He must assent to the order, and the order is to pay. The drawee here merely admitted a balance due as stated in the bill, but he did not assent to the order. He added: "but I do not know if the hands have been paid and will have to wait till 30 days are up." The only fair implication is that

he would take no action of any kind, but would wait until the thirty days had expired.  This was certainly no general or absolute acceptance, and we fail to find in the words used a qualified acceptance, either conditional or partial, as defined in the act.  Having made no promise to pay, nor signified any assent to the order to pay, there is nothing in the added words constituting a conditional acceptance which, in the language of the act, § 141 *supra*, "makes payment by the acceptor dependent on the fulfillment of a condition therein stated," nor do they constitute a partial acceptance, since there is no promise to pay any part of the amount, even at the end of thirty days, or when the hands have been paid. Under the Law Merchant, there was no requirement that the acceptance be in writing.  A mere verbal acceptance was sufficient.  The following verbal expressions have been held insufficient to constitute an acceptance:

"There is your bill.  It is all right."  *Powell v. Jones,* 1 Esp. 17.

"This bill will be paid, but we cannot allow you for a duplicate protest."  *Anderson v. Heath,* 4 Maule & Selwyn 303.

See, also, *Martin v. Bacon,* 2 Mills (S. C.) 132; *Parkhurst v. Dickerson,* 21 Pick. 307.  The negotiable instruments act, which requires that the acceptance be in writing, and expressly requires the signification of an assent to the order, was never intended to force an implication of such assent from words not necessarily implying an assent to the order, or a promise to pay at any time, any amount, upon any condition. Signification of assent means an express assent or the use of words necessarily implying an assent.  Clearly the act seeks to attain certainty.

No case cited by the respondent, whether arising under the statute or under the Law Merchant, sustains, as an acceptance, language of such doubtful import as that found in the writing here in question.  In *Crutchfield v. Martin,* 27 Okla. 764, 117 Pac. 194, the words were:  "I, John H. Crutchfield, accept the above order and agree to pay, etc."  In *Wallace*

*v. Douglas*, 116 N. C. 659, 21 S. E. 387, the language held an acceptance was: "Accepted. Payable when I receive funds to the use of J. T. Patterson jr. R. M. Douglas, U. S. Marshall." In *Green v. Duncan*, 37 S. C. 239, 15 S. E. 956, the acceptance read: "Whenever Mr. Sharkey finishes his contract for the building of my two stores in the town of Greenwood, I will honor the within order." Other cases cited hold that the word "except" will be construed to mean "accept" and constitute an acceptance.

Under the terms of the statute, construed with reference to the certainty which it is its manifest purpose to import into the law of negotiable instruments, we are constrained to hold that the writing here in question did not constitute an acceptance. Since it is the sole basis of the complaint in intervention, the demurrer to that complaint should have been sustained.

The judgment is reversed.

Crow, C. J., Main, Chadwick, and Gose, JJ., concur.